# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 06 CR 772 |
| v. ) | |
| ) | Judge Joan B. Gottschall |
| RICK BOROS ) | |
| a/k/a VINCE KWIATKOWSKI ) | |

## MEMORANDUM OPINION AND ORDER

On May 20, 2008, a jury found defendant Rick Boros, also known as Vince Kwiatkowski, guilty of drug and money laundering conspiracies. On May 27, 2008, pursuant to Federal Rule of Criminal Procedure 33, Boros filed a timely *pro se* motion for a new trial and motion for judgment of acquittal. On November 3, 2009, the court denied Boros's motion for judgment of acquittal and ordered further briefing on issues relating to his motion for a new trial. For all the foregoing reasons, Boros's motion for a new trial is denied.

## I. Analysis

### A. Rule 33 Standard

Pursuant to Federal Rule of Criminal Procedure 33, a court may grant a defendant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). This decision is "committed to the sound discretion of the trial judge." *United States v. Gillaum*, 372 F.3d 848, 857-58 (7th Cir. 2004) (citations omitted). In determining whether to grant a new trial, a court should exercise "great caution" and be "wary of second guessing the determinations of the . . . jury." *Id*. (citing *United States v. DePriest*, 6 F.3d 1201, 1216 (7th Cir. 1993)). Further, the power to grant a Rule 33 motion

should be exercised only in the "most 'extreme cases.'" *United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1988) (quoting *United States v. Morales*, 902 F.2d 604, 605 (7th Cir. 1990)).

**B.** ***Brady***

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." To establish a *Brady* violation, a defendant must prove that: "(1) the evidence at issue was favorable to the accused, either because it was exculpatory or impeaching; (2) the evidence was suppressed by the Government, either willfully or inadvertently; and (3) the denial was prejudicial." *United States v. Kimoto*, 588 F.3d 464, 474 (7th Cir. 2009).

At issue is an alleged[1] October 11, 2004 email from Larry Calow to Boros (the "October 2004 email") which read:

> He [Gary] has 2 websites working all the time. Purchasemeds.com was the one you and the CC [credit card] processors saw. He also had pmeds.com that he used to sell steriods and the other stuff. I should have told you sooner but he is my brother and I did not want to go against him. He and Liz formed the new company in Feb to be ready if you ever found out what was really going on.

*Pro se* Mot. at 20. Having reviewed the parties' submissions, the court finds no basis to conclude that the second *Brady* requirement – a showing that the email was suppressed by the government, either willfully or inadvertently – has been met. Asserting that it never had the email within its possession at any time before or during trial, the government explained that it first learned of the

---

[1] The government states that the WhoIs database at Register.com, a website which provides information relating to the creation of domain names, lists www.Frankfortdrywall.com as having been created on January 13, 2006, two years *after* Larry Calow allegedly sent the October 2004 email to Boros. The government suggests that the October 2004 email may have been fabricated by Boros to bolster his claim of innocence.

2

existence of the alleged email when Boros attached it to his *pro se* motion for a new trial in May 2008. Further, the government explained that it served search warrants upon Yahoo! for Larry Calow's email account, lcalow@yahoo.com, and Gary Calow's email account, gcalow@yahoo.com. Therefore, the email at issue, from Larry Calow at lcalow@frankfortdrywall.com to Boros at doctork@unix.com, was not uncovered by the government. In his brief, Boros makes no attempt to argue that the government nevertheless had the email in its possession prior to receipt of his *pro se* motion for a new trial. The court finds no basis to conclude that a *Brady* violation occurred here.[2]

### C. Newly Discovered Evidence

Boros argues that the post-trial discovery of the October 2004 email is "newly discovered evidence" which necessitates a new trial. To win a new trial based on newly discovered evidence, a defendant must show that "'the evidence (1) came to [his] knowledge only after the trial; (2) could not have been discovered sooner and [he] exercised due diligence; (3) is material, and not merely impeaching or cumulative; and (4) would probably lead to an acquittal in the event of a retrial.'" *United States v. Bender*, 539 F.3d 449, 455-56 (7th Cir. 2008) (citations omitted).

The court concludes that Boros has failed to show that the email could not have been discovered sooner and that he exercised due diligence. According to Boros, he could not have discovered the email prior to trial because the government failed to return two computers it seized from him. The government asserts that it has returned all of Boros's computers, and this court,

---

[2] In his *pro se* motion, Boros also states that the government failed "to return personal items taken from defendant such as his computers and 20 large, black, plastic bags of personal and business records which contained exculpatory evidence under *Brady*." *Pro se* Mot. at 1-2. With the exception of the October 2004 email, Boros fails to identify any of the alleged exculpatory evidence withheld by the government. And, as discussed *infra*, the court has already found that the government returned all of the computers it seized from Boros. Therefore, the court has analyzed Boros's *Brady* claim based solely on the October 2004 email.

3

relying on affidavits and receipts provided by the government, has already rejected Boros's position by concluding that all computers seized by the government were returned to Boros prior to trial. *See* 9/25/08 Minute Order. In light of this, the court rejects Boros's assertion that he could not retrieve the email at issue because of the allegedly missing computers. In addition, according to Boros, those two computers remain in the custody of the government, and yet, just after his trial, Boros was able to access the email. Boros stated, "after his trial in May 2008, Mr. Boros, who historically had performed computer technical services for Frankfort Drywall Supply, Inc[.], along with Larry Calow, was providing services for the company. While accessing Frankfort Drywall Supply, Inc[.]'s computer systems, he discovered the email from Larry Calow at lcalow@frankfortdrywall.com to him at doctork@unixgroup.com." Boros Resp. at 3-4. Boros claims he has no recollection of receiving the email at the time it was originally sent.

Boros has not provided adequate proof that he could not have uncovered this email before trial. He has failed to explain why he could not have accessed this email through his own email account at doctork@unixgroup.com or why he could not have taken the identical steps he took to access the email in May 2008 at some point prior to his criminal trial. Boros has failed to convince the court that, even if diligent, he could not have retrieved this email prior to trial. As a result, the October 2004 email is not newly discovered evidence which would warrant a new trial in this case.

### D. Ineffective Assistance of Trial Counsel

Finally, Boros claims his counsel was ineffective and presents various complaints to support the charge. Due to the fact that Boros was *pro se* at the time he filed his motion for a new trial, the court has done its best to distill Boros's lengthy, but mostly undeveloped, list of alleged errors. At its essence, Boros's main claim is that his counsel failed to prepare adequately for trial, which

4

resulted in counsel's failure to understand the alleged distinction between pmeds.com and purchasemeds.com and counsel's subsequent failure to present Boros's theory – that he was unaware of the illegal pmeds.com website – to the jury. Boros argues that his counsel failed him by: (1) refusing to put on three witnesses (Cheryl Soucy and two unidentified individuals) who would have rebutted the testimony of Angela Burdick-Valenza; (2) refusing to introduce proffers made by Larry Calow and Randy Soderland which would have allegedly exonerated Boros; (3) failing to recall Angela Burdick-Valenza to elicit testimony from her that Boros told her that he would sell anything to her friends as long as they had a pharmaceutical license and "her conversation with Larry Calow restating that [Boros] would never sell or allow illegal drugs to be sold," Mot. at 13; (4) failing to find and present the October 2004 email as part of Boros's defense; (5) failing to file a timely *Brady* motion and a timely request for a *Santiago* hearing; (6) failing to take statements from Gary and Patricia Calow (who are currently detained in Mexican jails); and (7) failing to request that the court instruct the jury on defendant's theory of the case.

To establish ineffective assistance of counsel, a defendant must demonstrate: (1) that his attorney's performance was deficient; and (2) that such representation prejudiced his case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The first prong is satisfied by showing that counsel's performance fell below the "objective standard of reasonableness" guaranteed under the Sixth Amendment. *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993) (quoting *Strickland*, 466 U.S. at 688). To satisfy the *Strickland* prejudice element, a defendant must demonstrate that it is reasonably probable that, but for his counsel's errors, the decision reached would have been different. *Strickland*, 466 U.S. at 694.

The court notes that at least some of the charges Boros levels at his trial counsel are, on their face, unsupported by the record. For instance, Boros faults his counsel for failing to call Randy Soderland and Larry Calow. With respect to Soderland, Boros's attorney could not be deficient in failing to present the testimony of a co-defendant who refused to testify at Boros's trial. Likewise, Larry Calow's affidavit does not "exonerate" Boros, as he claims. *Pro se* Mot. at 7. While the affidavit avers that the "only function Rick Boros performed for the pharmacy was to negotiate our credit card processing rates and receipt facilities and some general accounting duties," *Pro Se* Mot. at 17-18, it does not state that Boros had no knowledge of the illegal nature of the business, nor does it suggest that Larry and Gary Calow deliberately kept Boros ignorant of the illegal business they were running. Further, Boros faults his counsel for failing to file a *Brady* motion in a timely fashion. Boros claims that the government's alleged failure to turn over the computers (which, according to Boros, contained *Brady* material), as well as alleged statements given by Gary and Patricia Calow from jail in Mexico, violated *Brady*. With respect to the computers, a failure to file a timely *Brady* motion could not have prejudiced Boros because there was no *Brady* violation associated with the computers. Further, Boros baldly asserts, without basis, that Gary and Patricia Calow gave statements and that those statements were exculpatory. It is unclear how Boros knows of the existence of these alleged statements as he also states that these statements have never been turned over to him. Boros provides nothing to support the notion these two individuals agreed to incriminate themselves by providing statements for Boros. Therefore, the court rejects the foregoing alleged errors as potential bases for the ineffective assistance of counsel claim.

Turning then to the remaining errors, and assuming *arguendo* that they satisfy the first prong of *Strickland*, the court concludes that, in light of the strong evidence at trial, there is not a

reasonable probability that the outcome would have been different had these alleged errors not been made. The evidence at trial established Boros's participation in the drug and money laundering conspiracies in several ways. Some of the most powerful evidence against Boros came in the form of emails between him and the Calow brothers. Boros maintains that his counsel erred in failing to present the theory Boros advances now – that is, that he had no knowledge of, or involvement in, any illegal activities. Unfortunately for Boros, emails admitted at trial directly contradict that theory. For instance, Larry Calow sent the following message to his brother with a copy to Boros: "Gary I don't care when you set up the mailing but I wouldn't do the steroids first I would do the legit medicine first it will look better." Exhibit Yahoo! 5B. This email, which was presented to the jury (and which Boros does not deny receiving), is strong evidence which directly disputes Boros's current claim that he had no knowledge of any illegal drug activity. In addition, it directly contradicts Boros's assertion that Larry and Gary Calow conspired to keep Boros ignorant of the illegal nature of the business.

In addition to that email, the government presented additional emails which strongly support the jury's conclusion that Boros actively participated in the illegal nature of the business. For example, Boros forwarded a pre-approved MasterCard to Gary and Larry Calow with the message: "Guys - This is a card we can use a bogus name on and get servers, etc withour [sic] it comoing [sic] back to us. V." Exhibit Yahoo! 5J. As the government quite rightly points out, "There is nothing legitimate about using a credit card with a bogus name." Resp. at 6. Likewise, another email admitted at trial supports a finding that Boros knew that his business was selling prescription drugs over the internet without requiring a prescription. On April 21, 2003, Boros sent proposed advertisements to Gary Calow via email. One of the advertisement stated, "Prescription Drugs

Shipped Overnight to your door! No prior prescription necessary." Exhibit Yahoo! 5D. Another ad stated, "Medical Prescription shipped immediately to your door! No current prescription necessary." *Id*. Finally, the government presented evidence of a series of emails in 2003 which showed Boros's knowledge of, and involvement with, the illegal pharmacy website, Pmeds.com: (1) on August 5, 2003, Boros sent an email to Larry and Gary Calow in which he sought help setting up his "pmeds email account" and in which he lists his email address as "vince@pmeds.com"; (2) on November 6, 2003, Gary Calow sent Boros an email regarding "Dedicated servers: pmeds.com"; (3) on November 17, 2003, Boros emailed Gary Calow a message with the subject "Re:pmeds" with updated information about the Pmeds.com domain name; and (4) on June 15, 2004, Boros sent Gary Calow an email indicating Boros's role in switching the incorporation of Pmeds Limited from New Jersey to the island of Cyprus. *Id*.

In addition to the incriminating emails, the government also presented testimonial evidence from Angela Burdick and a letter of intent between Boros and his co-conspirators, Gary and Larry Calow. Burdick's testimony placed Boros at the Tinley Park, Illinois house (the base of the alleged illegal pharmacy operation) every week, where he cashed checks from pmeds.com (only the illegal pharmacy website accepted checks) in a way that would keep the checks hidden from the authorities, and received substantial amounts of cash for his work. She testified that Boros obtained prescriptions from a doctor for those times when a prescription was needed to get the drugs through customs. The jury also heard testimony about the letter of intent, executed by Boros and the Calow brothers, which evidenced the co-conspirators' intent to form and operate an international pharmacy based in Belize with operations in Toluca, Mexico. Burdick testified that she saw the letter of intent at both Gary Calow's and Boros's residences. She also identified Boros's signature on the letter.

8

Further, amendments made to the letter of intent served to support the government's claim that there was no distinction between Purchase Meds and Pmeds. In June 2003, when Boros attempted to modify the terms of the letter of intent with the Calow brothers, Boros sent an email to Larry and Gary Calow in which he identified the amendment as "pmedscontractpassword-2-5.doc." Exhibit Yahoo! 5G. Likewise, the next day, Boros sent an identical email to the Calow brothers with an attachment named "pmeds_final-2-3.doc." *Id*.

Even if Boros's counsel had not made the alleged errors described by Boros, including the presentation of the October 2004 email, the court cannot conclude that there is a reasonable probability that the outcome would have been different. Even giving Boros every benefit of the doubt and assuming his counsel could have attempted to authenticate the October 2004 email, the government's case, especially through incriminating emails, was strong and, significantly, Boros provides no explanation for the statements made in the incriminating emails. Because Boros has failed to show a reasonable probability that the outcome of his trial would have been different, his claim of ineffective assistance of counsel fails.

## II. Conclusion

For all the foregoing reasons, defendant Rick Boros's motion for a new trial is denied.

ENTER:

_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: February 12, 2010

9